156 So.2d 489 (1963)
Theodore SOSENKO, Petitioner,
v.
AMERICAN AIRMOTIVE CORPORATION, United States Fidelity and Guaranty Company, and the Florida Industrial Commission, Respondents.
No. 32463.
Supreme Court of Florida.
September 11, 1963.
Johnson, Gaine & Kaiser and Thomas J. Gaine, Miami, for petitioner.
Summers Warden, Miami, for American Airmotive Corp. and U.S. Fidelity and Guaranty Co.; Burnis T. Coleman and Patrick H. Mears, Tallahassee, for Florida Industrial Commission, respondents.
TERRELL, Acting Chief Justice.
May 9, 1961, while in line of duty, a scaffold on which petitioner was working collapsed, throwing petitioner to a cement deck causing him serious injury. He experienced immediate pain in his right foot and was promptly provided medical care. He was found to have sustained a fracture of the right os calcis which the employer accepted as being compensable. He was carried to Hialeah Hospital and placed under the care of Dr. Ledford Gregory for a period of eight days. As a result of the accident, petitioner became totally disabled and was compensated by the carrier for temporary total disability.
Petitioner is 38 years of age with formal schooling through the eleventh grade. He *490 had worked more than eight years as a spray painter for the New York Central Railroad. For more than three years he followed the same employment with National Air Lines. He had been working for his present employer for approximately two months in the same line of work.
Upon discharge from Hialeah Hospital petitioner walked on crutches at home, in severe pain. While on crutches the blood would flow to his foot requiring that it be elevated above his head. Due to the pain he lost sleep and was required to take sleeping pills. He was depressed and upset because of his foot condition and the fear that he would never be able to return to his old occupation. His occupation required much climbing and walking and he worried about that. Because of his pain, fear of not getting his job back and his dwindling finances, he became despondent.
August 11, 1961, Dr. Gregory informed petitioner that he could return to light work provided he did little standing or walking and no climbing. At this time petitioner's foot was swollen and painful and he resolved to wait two weeks before seeking work.
August 13, 1961, about 2:00 A.M., after petitioner had engaged in a normal day's activities and a casual evening with friends, he experienced chest pains and was admitted to the North Shore Hospital where his condition was diagnosed as an acute myocardian ischemia and posterior wall infarct. During this time the carrier paid claimant compensation for temporary total disability for his ankle injury but denied payment of remedial treatment and hospital expenses for the heart attack. Claim was made only for medical benefits and not for temporary or permanent disability benefits.
Claimant was treated for his heart attack by Dr. Morris E. Kuckku and was examined for the carrier by Dr. Morton M. Halpern. After his heart attack, he returned to American Airmotive in January 1962. He worked four days and because of excessive pain in his foot and ankle, he had to stop working. He returned for treatment and his ankle was operated upon.
There are two transcripts of the hearing before the deputy commissioner and petitioner is uncertain which one was before the full commission on review. A stipulation was entered into on May 29, 1962, and an order entered providing for the court reporter's notes to be transcribed and become the official transcript. This contains about 70 pages which is all of the testimony.
Pursuant to petitioner's claim for medical expenses, the deputy commissioner found that there was a causal connection between the heart attack of August 13, 1961, and the compensable ankle injury of May 9, 1961, and accordingly ordered the carrier to pay the remedial claims. The deputy commissioner largely based his ruling upon the medical opinions of Doctors Kuckku and Halpern. In his order the deputy found in part:
"6. It was Dr. Gregory's opinion at the hearing held before the Deputy Commissioner that the fracture of the right os calcis sustained by the claimant was very painful and disabling. That he noticed that the claimant was very apprehensive and depressed.
"It was Dr. Kuckku's opinion that the fracture of the os calcis with the resultant confinment [sic] and inactivity of the claimant, together with the state of anxiety tension, the state of worry, the increasesd amount of cigarette smoking which resulted from the pain and confinment [sic] due to the fractured os calcis, in that the claimant testified while he was working he could not smoke on the job and therefore his cigarette consumption amounted to about 1/2 pack per day and that since he was injured his consumption had increased to 2 1/2 to 3 packs a day, that based on the aforesaid conditions the fracture of the os calcis was a competent, accelerating or precipitating cause of the acute myocardial ischemia *491 which the claimant suffered on August 13, 1961.
"Dr. Morton Halpern testified that the sequillae of the fractured os calcis, in his opinion, was a competent, accelerating, precipitating or aggravating cause of the acute myocardial occulusion [sic] suffered by the claimant on or about the 12th day of August 1961." (Emphasis supplied) (R. 75)
Upon review the full commission reversed the deputy commissioner and dismissed the claim on the dual grounds that there was no competent substantial evidence to sustain the deputy commissioner's finding that the heart attack was causally related to the original ankle injury and because the deputy commissioner's findings failed to accord with the essential requirements of law relating to the compensability of the so-called "heart cases" as set forth in the case of Victor Wine & Liquor, Inc. v. Beasley, Fla. 1962, 141 So.2d 581. The full commission's order reflects that it was aware of the fact that the rule in the Victor Wine case specifically applied to heart attacks suffered by an employee during the course of his employment in cases wherein the heart attack was the primary injury upon which the workmen's compensation claim was filed. The full commission reached its conclusion denying recovery with the following language:
"* * * Nevertheless, it is our opinion that the basic element of the rule, as stated, applies equally to heart attacks suffered subsequent to an accidental injury and there must be shown by the injured employee some positive causal connection between the injury and the heart attack based upon positive evidence and not mere speculation or conjecture. An examination of the record reveals that on the date of the heart attack, that is, August 12, 1961, claimant had a normal day; that he played with his son, and he and his wife entertained company for the evening; that the claimant-employee had a couple of cocktails, and that he and his guests `just sat around.' While these normal activities were transpiring the symptoms of a heart disorder appeared and he was admitted to the hospital early in the morning of the next day.
"Although there is testimony that claimant did suffer from apprehension regarding his employment, nevertheless, the same doctor who testified to the above also testified that tension alone could not cause an attack nor could pain alone be a sole factor in such an attack. With regard to the tension aspect from which claimant was allegedly suffering, there was also testimony to the effect that he was concerned about his wife having cancer and this caused him worry and tension. There is no question but what the claimant was suffering from a preexisting sclerotic condition and that notwithstanding this, he would probably have eventually sustained a heart attack. It is shown by positive evidence that claimant was undergoing no unusual exertion or strain; and that during the course of the day in question he was doing nothing unusual and was relaxing in the evening. We do not believe and it is our opinion that the evidence in the instant cause is insufficient to sustain the compensability of claimant's heart attack, or establish its causal relationship to the original injury, that there must be more than speculation and conjecture to sustain or support the compensability of a claim such as we have here." (R. 90, 91) (Emphasis supplied)
The first question presented for our determination is whether or not the full commission erred in applying the rule of the Victor Wine case, supra, to the facts of the instant case. In the Victor Wine case this court said:
"* * * we adopt the following rule for heart cases: When disabling heart attacks are involved and where such *492 heart conditions are precipitated by work-connected exertion affecting a pre-existing non-disabling heart disease, said injuries are compensable only if the employee was at the time subject to unusual strain or over-exertion not routine to the type of work he was accustomed to performing."
It is clear from the facts of the Victor Wine case that the rule adopted therein involved only a determination as to whether an injury to the claimant was compensable under the workmen's compensation act in the first instance. Our holding in that case did not necessarily carry with it an answer to the question of whether compensation would be extended to a subsequent injury related in some way to a primary injury which was previously held compensable.
Many authorities recognize the distinction between the causation rules affecting a primary injury and causation rules which determine how far the range of compensable consequences are to be carried once the primary injury is clearly established as being causally connected with the employment. Larson in his workmen's compensation work has stated the applicable rule, which we adopt as our own, as follows:
"* * * But when the question is whether compensability should be extended to a subsequent injury or aggravation related in some way to the primary injury, the rules that come into play are essentially based upon the common-law concepts of `direct and natural results,' and of claimant's own negligence as an independent intervening cause.
"The basic rule is that a subsequent injury, whether an aggravation of the original injury, is compensable if it is the direct and natural result of a compensable primary injury. But if the subsequent injury is attributable to claimant's own negligence or fault, the chain of causation is broken, even if the primary injury may have contributed in part to the occurrence of the subsequent injury." Larson's Workmen's Compensation Law, Vol. I, § 13.11.
See also Johnnie's Produce Co. v. Benedict & Jordan, Fla. 1960, 120 So.2d 12, and City of Lakeland v. Burton, Fla. 1941, 147 Fla. 412, 2 So.2d 731.
From the above it is clear that the full commission applied the wrong rule of law to the facts in the instant case and, therefore, its decision must be set aside. Having determined that the full commission has erred in applying the rule of the Victor Wine case to a subsequent injury related in some way to the compensable primary injury does not, however, conclude this matter because we must determine whether or not the deputy commissioner's findings were supported by competent substantial evidence and whether or not they conform to the essential requirements of law.
We have carefully examined the testimony of record and are convinced that the deputy commissioner's findings of fact quoted in part herein contain an accurate synopsis of the testimony of Doctors Gregory, Kuckku and Halpern. The record in this cause is replete with competent substantial evidence sufficient to sustain the deputy commissioner's conclusion that the petitioner's compensable ankle fracture "was a competent, accelerating or precipitating cause" of the petitioner's heart attack. Unfortunately, it is not clear from the deputy commissioner's order whether or not he applied the rule of law which we have discussed herein as being applicable to this cause. From our examination of the deputy commissioner's order we cannot say with certainty that had he applied said rule he would have found petitioner's heart attack was the "direct and natural result" of the compensable primary injury. Further, it is not clear from the deputy commissioner's findings whether the subsequent injury can be considered attributable to petitioner's own negligence or fault to such *493 an extent that said negligence or fault became an independent intervening cause of the subsequent injury.
For the reasons above stated, the petition for writ of certiorari is hereby granted and the order of the full commission quashed with directions that this cause be remanded to the deputy commissioner with directions that he proceed with a re-evaluation of the testimony of record and enter new findings and conclusions not inconsistent with the principles of law expressed herein.
It is so ordered.
ROBERTS and THORNAL, JJ., and GORDON, Circuit Judge, concur.
THOMAS, J., dissents.